**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **MICHELLE DAVIS,** )<br>)<br>    **Plaintiff,** )<br>) | |
| v. )<br>) | **CIVIL ACTION NO.:**<br>25-cv-250 |
| **FLOWERWOOD NURSERY, INC.,** )<br>) | **JURY DEMAND** |
| )<br>    **Defendant.** ) | |

**COMPLAINT**

**I.    INTRODUCTION**

1. This is an action for declaratory judgment, equitable relief, and money damages, instituted to secure the protection of and to redress the deprivation of rights secured through: the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §2601, *et seq*. The plaintiff seeks compensatory, liquidated, and nominal damages, and requests a jury trial pursuant to 42 U.S.C. § 1981a.

**II.    JURISDICTION AND VENUE**

2. Plaintiff believes that this Court has jurisdiction in accordance with 28 U.S.C. §1331, 29 U.S.C. §2617, 28 U.S.C. §§2201 and 2202, and 29 U.S.C. §794a.

3. The unlawful employment practices alleged hereinbelow were committed by the defendant within Baldwin County, Alabama. Venue is proper pursuant to 28 U.S.C. §1391 and 42 U.S.C. §2000e-5(g).

4. The Defendant is a covered employer pursuant to 29 U.S.C. §2611(4).

5. At all times relevant to this action the Defendant has employed at least 50 or more employees for each working day during each of the 20 or more calendar work weeks in the

applicable calendar years within a 75-mile radius of Plaintiff's worksite.

### III.   PARTIES

6. Plaintiff, Michelle Davis (hereinafter "Davis" or "Plaintiff"), is a female citizen of the United States and a resident of the State of Alabama.

7. Plaintiff was an eligible employee under the FMLA in that she worked for the Defendant for more than 12 months and had worked more than 1250 hours of service within the preceding 12 months and had worked at a location where at least 50 employees were employed.

8. Defendant, Flowerwood Nursery, Inc., (hereinafter "Flowerwood" or "Defendant" is an Alabama company doing business in Baldwin County, Alabama.

9. The Defendant is a covered employer pursuant to 29 U.S.C. §2611(4).

10. At all times relevant to this action the Defendant has employed at least 50 or more employees for each working day during each of the 20 or more calendar work weeks in the applicable calendar years within a 75-mile radius of Plaintiff's worksite.

### IV.   FACTUAL ALLEGATIONS

11. Over ten (10) years ago, the Plaintiff began working for the Defendant as a Receptionist; approximately nine (9) months later she moved into the role of Inside Sale Representative working out of the Defendant's Loxley, Alabama, location.

12. Plaintiff remained employed in this position up to and until her unlawful termination on July 12, 2024.

13. At the time of her termination, the Plaintiff's supervisors were Zach Ryan (Wholesale Account Manager), and Todd Carnley (Vice President of Sales and Marketing.).

14. During the Plaintiff's employment her rights under the Family and Medical Leave Act "FMLA") were violated as set out herein.

15. In April 2024 the Plaintiff's mother was in a car accident resulting in a serious medical conditions which required surgery with medical providers in the Birmingham, Alabama, area.

16. Initially, Plaintiff continued to work remotely for the Defendant while staying with her mother in the hospital in Birmingham, Alabama.

17. When it became clear that the Plaintiff's mother would need additional medical care, Plaintiff was given FMLA paperwork on or about May 2, 2024, by the Defendant's Human Resources Generalist, Rebecca Kessler.

18. Plaintiff applied for FMLA leave in relation to her mother's serious medical condition and the leave request was approved for FMLA leave from May 3, 2024, through July 31, 2024, and for intermittent leave of 2-3 times per month for the next six (6) months in relation to her mother's medical appointments.

19. Rebecca Kessler informed Plaintiff that her FMLA and intermittent FMLA was approved and told Plaintiff that she did not have to explain details to Todd Carnley about taking the intermittent FMLA as he was aware of the procedures, but she would just need to let him know which days she needed off.

20. On or about the first day of Plaintiff's approved FMLA leave, the Defendant removed her name from all of her sales accounts and reassigned them to other employees.

21. This had a direct impact on Plaintiff's ability to be correctly paid earned commissions as the Defendant's software program utilized for such calculations would only give credit to employees based on their names being associated with each account.

22. While on FMLA leave, the Plaintiff made inquiries to her supervision, Zach Ryan and Todd Carnley, as well as Human Resources as to why her name had been removed from her sales accounts. She received no answer.

23. As a result of having her name removed from her sales accounts, Plaintiff was unable to access information in order to calculate and determine her commission payments due and her vacation days used/remaining. She inquired to her supervisors and Human Resources about these issues, as well, and also did not receive any response.

24. Plaintiff continued to pursue the matter with Carnley who instructed her to send him her sales paperwork which she then explained again that she was no longer able to access her account information. Carnley replied that they would handle it and she was still not given access to her sales accounts nor any explanation for why she was locked out of them.

25. After approximately 8 weeks of FMLA leave, Plaintiff returned to work on or about July 1, 2024. At the time Carnley was out on vacation.

26. Once she returned to work the Plaintiff's name remained removed from her sales accounts.

27. She also remained unpaid for two weeks' commission earnings for May 2024, and her sales reports were incorrect by around $150,000.00 in sales figures (due to having her name removed from her accounts), which negatively impacted her commission income.

28. Once Carnley returned from vacation in the second week of July 2024, Plaintiff again inquired to him 2-3 times about why she was still removed from her sales accounts and about her pay being incorrect.

29. Carnley said he would look into the pay situation.

30. No explanation was ever given to Plaintiff as to why her names was removed from her accounts and traditionally the Defendant did not remove sales employees from their accounts if they were out on vacation, leave, etc.

31. The incorrect sales report was corrected, however the Plaintiff remained "off" of her prior sales accounts until Wednesday, July 10, 2024, immediately preceding the further acts of retaliation which culminated in her termination.

32. On or about July 11, 2024, Carnley called Plaintiff to his office and issued her unfounded verbal reprimands about her productivity and restricted her to work only at her desk and to have no interaction with others in the workplace.

33. Plaintiff had no prior history of disciplinary actions or performance issues.

34. Following this meeting with Carnley, the Plaintiff called Human Resources Generalist Rebecca Kessler and complained about Carnley's negative treatment of her (removal from accounts, failure to pay, incorrect commission payments) and of his unfounded reprimands of her on or about July 11, 2024.

35. Kessler replied that there was no reason for Plaintiff to be treated that way and that in her opinion this sounded like FMLA discrimination or retaliation.

36. Kessler also provided Plaintiff with an online link to the U.S. Department of Labor to report the FMLA violations.

37. Plaintiff conducted this call with Kessler outside of the office in her car; Carnley observed Plaintiff on her phone in her car.

38. Plaintiff informed Kessler of this and expressed fear that Carnley would find fault with her being on the phone; Kessler advised her to tell Carnley that she was on a confidential call with Human Resources.

39. The following day, July 12, 2024, before Plaintiff could file a report of FMLA violations with the Department of Labor, she was called to a meeting in Human Resources where Carnley informed her that her employment was terminated.

40. She was informed that she was allegedly being terminated for insubordination which included Carnley observing Plaintiff speaking on the phone with Human Generalist Rebecca Kessler, and because Carnley said he was told that Plaintiff was going to "get him," and that she posed a threat.

41. Clearly, the Plaintiff's complaints to Kessler of FMLA retaliation and discrimination by Carnley had resulted in her unlawful retaliatory termination.

42. The Defendant discriminated against the Plaintiff in retaliation for invoking her federally protected rights under the FMLA as she was subjected to having her name removed from her accounts, being denied wages/commissions owed, being subjected to unwarranted discipline, and having her employment terminated.

43. The Defendant discriminated against the Plaintiff in retaliation for complaining of and opposing the violations of her FMLA rights by having her employment terminated.

44. The Defendant interfered with the Plaintiff's federally protected rights under the FMLA by terminating her employment.

45. The Defendant's unlawful actions against the Plaintiff, as set out above, were not made in good faith, nor did the Defendant have any reasonable grounds for believing that such acts were not a violation of the Plaintiff's federally protected rights under the FMLA.

46. The Defendant acted intentionally, maliciously, and with reckless indifference to Plaintiff's federally protected rights.

47. As the result of the Defendant's conduct the Plaintiff was deprived of income and other employment benefits due her.

48. Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein, and this suit for a declaratory judgment, backpay, an injunction, and compensatory and liquidated damages is her only means of securing adequate relief.

49. Plaintiff is suffering and will continue to suffer irreparable injury from the Defendant's unlawful conduct as set forth herein unless enjoined by this Court.

### V. CAUSES OF ACTION

#### COUNT I – INTERFERENCE IN VIOLATION OF THE FAMILY MEDICAL LEAVE ACT OF 1993

50. Plaintiff realleges and incorporates by reference Fact paragraphs 11 through 41 above with the same force and effect as if fully set out in specific detail hereinbelow.

51. As set forth herein, Plaintiff was an eligible employee under the FMLA in that she worked for more than 12 months and had worked more than 1250 hours of service within the preceding 12 months and had worked at a location where at least 50 employees were employed.

52. As a result of the serious medical conditions her mother, as set out in detail above, the Plaintiff was eligible for federally protected medical leave from the Defendant.

53. As a result of the serious medical condition of her mother, as set out in detail above, Plaintiff made known to the Defendant her need to take medical leave and was approved for Family Medical Leave for multiple periods from May 3, 2024, through July 31, 2024, and for intermittent leave thereafter for a period of six months.

54. Upon Plaintiff's return to work from her approved medical leave, the Defendant interfered with the Plaintiff's substantive rights under the Act by terminating her employment such

that she could no longer take any future approved FMLA leave.

55. The Defendant acted intentionally, maliciously, and with reckless indifference against Plaintiff, in terms, conditions, and benefits of her employment in violation of the FMLA.

56. The Plaintiff is now suffering and will continue to suffer irreparable injury from the Defendant's unlawful policies and practices as set forth herein unless enjoined by this Court.

57. The Defendant's unlawful actions against the Plaintiff, as set out above, were not made in good faith, nor did the Defendant have any reasonable grounds for believing that such acts were not a violation of the Plaintiff's federally protected rights.

58. The Plaintiff seeks to redress the wrongs alleged herein under the FMLA for lost wages (plus interest), lost benefits (plus interest), liquidated damages, an injunction and a declaratory judgment.

## COUNT II – RETALIATION/DISCRIMINATION IN VIOLATION OF THE FAMILY MEDICAL LEAVE ACT OF 1993

59. Plaintiff realleges and incorporates by reference Facts paragraphs 11 through 41 above with the same force and effect as if fully set out in specific detail hereinbelow.

60. As set forth herein, Plaintiff was an eligible employee under the FMLA in that she worked for more than 12 months and had worked more than 1250 hours of service within the preceding 12 months and had worked at a location where at least 50 employees were employed.

61. As a result of the serious medical conditions of her mother, as set out in detail above, the Plaintiff was eligible for federally protected medical leave from the Defendant.

62. As a result of the serious medical conditions of her mother, as set out in detail above, Plaintiff made known to the Defendant her need to take medical leave and was approved for Family Medical Leave for multiple periods from May 3, 2024, through July 31, 2024, and for

intermittent leave thereafter for a period of six months.

63. The Defendant retaliated/discriminated against the Plaintiff for her protected activities of seeking FMLA leave and/or taking approved FMLA by subjecting her to: having her name removed from her sales accounts, being denied wages/commissions owed her, being subjected to unwarranted discipline/reprimands, and having her employment terminated.

64. Plaintiff engaged in protected activity by complaining of her discriminatory/retaliatory treatment to the Defendant's Human Resources personnel who recognized the potential FMLA violations which had occurred.

65. The following day, Plaintiff was unlawfully retaliated against for her protected activity of complaining of FMLA violations by having her employment terminated.

66. The Defendant acted intentionally, maliciously, and with reckless indifference against Plaintiff, in the terms, conditions, and benefits of her employment in violation of the FMLA.

67. The Plaintiff is now suffering and will continue to suffer irreparable injury from the Defendant's unlawful policies and practices as set forth herein unless enjoined by this Court.

68. The Defendant's unlawful actions against the Plaintiff, as set out above, were not made in good faith, nor did the Defendant have any reasonable grounds for believing that such acts were not a violation of the Plaintiff's federally protected rights.

69. The Plaintiff seeks to redress the wrongs alleged herein under the FMLA for lost wages (plus interest), lost benefits (plus interest), liquidated damages, an injunction and a declaratory judgment.

## **PRAYER FOR RELIEF**

**WHEREFORE,** the Plaintiff respectfully prays that this Court assume jurisdiction of this action and after trial:

1. Issue a declaratory judgment that the employment policies, practices, procedures, conditions and customs of the Defendant are violative of the rights of the Plaintiff, as secured by the Family and Medical Leave Act of 1993;

2. Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting in concert with the Defendant and at the Defendant's request from continuing to violate the Family and Medical Leave Act of 1993;

3. Grant the Plaintiff an order requiring the Defendants to make her whole by awarding her reinstatement into the full-time position(s) she would have occupied in the absence of the unlawful acts by the Defendant with the same seniority, leave and other benefits of the position (or front pay), and back pay (with interest);

4. Grant Plaintiff a preliminary and permanent injunction pursuant to 29 U.S.C. §2617(1)(B) directing the Defendant to reinstate all of Plaintiff's employment benefits, including but not limited to her health insurance and retirement benefits, retroactive to the date of their cessation;

5. Grant plaintiff a declaratory judgment against the Defendant that their acts violated the FMLA;

6. Enter a judgment pursuant to 29 U.S.C. §2617(a)(1)(A)(i)(II) against the Defendant and in favor of the Plaintiff for the monetary losses Plaintiff sustained as a direct result of the Defendant's violations of the FMLA;

7. Grant Plaintiff applicable compensatory damages, liquidated damages (FMLA), and/or nominal damages, plus interest;

8. Grant Plaintiff her attorney's fees and costs; and

9. Grant Plaintiff such other relief as justice requires.

                        Respectfully submitted,

                        s/ Temple D. Trueblood
                        Temple D. Trueblood
                        Counsel for Plaintiff

OF COUNSEL:
WIGGINS, CHILDS, PANTAZIS, FISHER & GOLDFARB, L.L.C.
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
Telephone: (205) 314-0500
Facsimile: (205) 254-1500
ttrueblood@wigginschilds.com

**THE PLAINTIFF DEMANDS TRIAL BY STRUCK JURY ON ALL ISSUES TRIABLE TO A JURY.**

                        s/ Temple D. Trueblood
                        OF COUNSEL

Plaintiff requests this Honorable Court to serve via certified mail upon each of the named defendants the following: Summons, Complaint.

**Defendant's Address:**
**Flowerwood Nursery, Inc.**
**c/o Registered Agent**
**Ellis Ollinger**
**15315 Kelly Road**
**Loxley, AL 36551**

                        s/ Temple D. Trueblood
                        OF COUNSEL